UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALEXI JAVIER ANDRADE ESCOBAR,

                Petitioner,

      v.                                           **ORDER**
                                                  26-CV-1661-SJB

MARKWAYNE MULLIN et al.,

                Respondents.
----------------------------------------------------------------X
**BULSARA, United States District Judge:**

      Petitioner Alexi Javier Andrade Escobar ("Petitioner"), a citizen of El Salvador who has lived in the United States since 2016, was arrested on February 6, 2026, by U.S. Immigration and Customs Enforcement ("ICE") officers. (Pet. for Writ of Habeas Corpus filed Mar. 19, 2026 ("Pet."), Dkt. No. 1 ¶ 19; Resp'ts' Letter filed Mar. 20, 2026 ("Resp'ts' Letter"), Dkt. No. 7 at 1). The Petition alleges, and the Government's response does not appear to dispute, that Petitioner was placed into removal proceedings after he was arrested. (Pet. ¶ 6; Resp'ts' Letter at 1–2). He has been detained at the Metropolitan Detention Center in Brooklyn since February 26, 2026. (Pet. ¶ 20; Resp'ts' Letter at 2). Respondents identify no criminal history associated with Petitioner. For the reasons explained below, the writ is provisionally granted.

      The Government has filed an opposition to Petitioner's writ that suggests that the sole basis for Petitioner's detention is 8 U.S.C. § 1225, (Resp'ts' Letter at 2), despite the fact that Petitioner has been in the United States since 2016, (Pet. ¶ 19). The Government's position is that someone is subject to removal and detention under Section 1225(b)(2), as someone who is seeking admission to the United States, (Resp'ts'

Letter at 2 (citing 8 U.S.C. § 1225(b)(2)(A))), notwithstanding that they have been living here for months, if not years. The vast majority of courts in this District have rejected this argument. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490–91 (S.D.N.Y. 2025) ("[T]he line historically drawn between sections 1225 and 1226, which mak[es] sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens seeking admission into the country, whereas section 1226 governs detention of non-citizens already in the country. . . . This Court has similarly been unable to identify any authority to support Respondents' expansive interpretation of § 1225(b)." (quotations omitted)); *Padilla Molina v. DeLeon*, No. 25-CV-6526, 2025 WL 3718728, at *3 (E.D.N.Y. Dec. 23, 2025) ("This Court agrees with Petitioner that he is detained subject to Section 1226, not Section 1225. In so holding, the Court joins the hundreds of district court decisions that have rejected Respondents' expansive interpretation of Section 1225 as inconsistent with the plain text and overall structure of the INA.") (collecting cases); *Ulloa Montoya v. Bondi*, No. 25-CV-6363, 2025 WL 3718694, at *3 (E.D.N.Y. Dec. 23, 2025) (same); *Rodriguez-Acurio v. Almodovar*, -- F. Supp. 3d --, No. 25-CV-6065, 2025 WL 3314420, at *23 (E.D.N.Y. Nov. 28, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across

2

the United States." (quoting *Barco Mercado v. Francis*, -- F. Supp. 3d --, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025))).

As noted, the Government's response suggests the possibility that ICE issued Petitioner a Notice to Appear ("NTA"), placing him into removal proceedings, after they arrested Petitioner. (Resp'ts' Letter at 1–2; Decl. of Jason Langlois ("Langlois Decl."), attached to Resp'ts' Letter as Ex. 1, Dkt. No. 7-1 ¶ 12). The Government does not provide information as to the time the NTA was issued, as it does for the issuance and service of the arrest warrant and the arrest itself. (*See* Langlois Decl. ¶¶ 7–8, 11). The Court notes that the post-arrest issuance of an NTA may raise an independent basis for granting the writ, but does not reach the issue here. *See Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025).

Respondents submit that the Court can decide this matter on the submissions. (Resp'ts' Letter at 4). The Court incorporates the reasoning of judges in this District and its sister courts and grants the writ—because at its core, detention under Section 1225 violates due process guarantees and is inapplicable and inappropriate for individuals who have lived in the United States as long as Petitioner has.

The writ is provisionally granted. Respondents are directed to effectuate Petitioner's release by **March 21, 2026 at 9:00 A.M.** and file a letter on the docket confirming Petitioner's release by that time. Respondents are enjoined from detaining Petitioner absent further direction from this Court. Respondents may not use ICE ankle monitors or similar technology to monitor Petitioner, because the Court has granted the

3

writ, and is not resolving this petition on an intermediate basis by imposing bail conditions.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 20, 2026
        Central Islip, New York

4